## In re Anonymous No. 72 D.B. 90

Disciplinary Board Docket No. 72 D.B. 90.

McGIVERN, *Member,* November 26, 1991—Pursuant to Pennsylvania Rule of Disciplinary Enforcement 208(d)(2)(iii), the Disciplinary Board of the Supreme Court of Pennsylvania submits its findings and recommendations to the honorable court with regard to the above-captioned petition for discipline.

### PROCEDURAL HISTORY

The respondent is a [ ] attorney who was admitted to the practice of law in June 1981. He has a prior record of discipline, including two informal admonitions and a private reprimand arising out of four separate complaints, administered between December 12, 1988, and June 22, 1990.

On July 2, 1990, the Office of Disciplinary Counsel filed a four-count petition for discipline. That petition alleged the following rules violations:

### Charge I

(A) RPC 3.1—a lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis for doing so that is not frivolous,

which includes a good faith argument for an extension, modification or reversal of existing law;...

(B) RPC 5.3(c)(1)—with respect to a non-lawyer employed or retained by or associated with a lawyer, a lawyer shall be responsible for conduct of such a person that would be a violation of the Rules of Professional Conduct if engaged in by a lawyer if the lawyer orders or, with the knowledge of the specific conduct, ratifies the conduct involved;

(C) RPC 5.3(c)(2)—with respect to a non-lawyer employed or retained by or associated with a lawyer, a lawyer shall be responsible for conduct of such a person that would be a violation of the Rules of Professional Conduct if engaged in by a lawyer if the lawyer is a partner in the law firm in which the person is employed, or has direct supervisory authority over the person, and in either case, knows of the conduct at a time when its consequences can be avoided or mitigated but fails to take reasonable remedial action;

## Charge II

(D) RPC 8.1(a)—a lawyer is subject to discipline if the lawyer has made a materially false statement in, or if the lawyer has deliberately failed to disclose a material fact requested in connection with ... any disciplinary matter;

(E) RPC 8.4(a)—it is professional misconduct for a lawyer to violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;

(F) RPC 8.4(c)—it is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

(G) RPC 8.4(d)—it is professional misconduct for a lawyer to engage in conduct that is prejudicial to the administration of justice;

## Charge III

(H) D.R. 1-102(A)(2)—a lawyer shall not circumvent a Disciplinary Rule through actions of another:

(I) D.R. 1-102(A)(5)—a lawyer shall not engage in conduct that is prejudicial to the administration of justice;

(J) D.R. 5-103(B)—while representing a client in connection with contemplated or pending litigation, a lawyer shall not advance or guarantee financial assistance to his client, except that a lawyer may advance or guarantee the expenses of litigation, including court costs, expenses of investigation, expenses of medical examination, and costs of obtaining and presenting evidence, provided the client remains ultimately liable for such expenses;

(K) D.R. 7-102(A)(7)—in his representation of a client, a lawyer shall not counsel or assist his client in conduct that the lawyer knows to be illegal or fraudulent;

(L) D.R. 7-106(A)—a lawyer shall not disregard or advise his client to disregard a ruling of a tribunal made in the course of a proceeding, but he may take appropriate steps in good faith to test the validity of such rule or ruling;

(M) RPC 1.4(a)—a lawyer shall keep a client informed about the status of a matter and promptly comply with reasonable requests for information;

## Charge IV

(N) RPC 1.8(g)—a lawyer who represents two or more clients shall not participate in making aggregate settlement of the claims of or against the clients,... unless each client consents after consultation, including disclosure of the existence and nature of all the claims ... involved and of the participation of each person in the settlement;

(O) RPC 1.8(h)—a lawyer shall not make an agreement prospectively limiting the lawyer's liability to a client for malpractice unless permitted by law and the client is independently represented in making the agreement;...

(P) RPC 1.15(b)—upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.

Hearing Committee [  ] chaired by [  ],* conducted a hearing on November 19, 1990. The parties presented

---

* Member [  ] did not participate in this matter and it was agreed by all parties that the matter could and should be decided by [  ].

a stipulation of facts which was amplified by the Hearing Committee in its recommendation to the board. The stipulated facts bind both parties. See Disciplinary Board Rule 89.131.

With regard to Charge I the Hearing Committee found violations of RPC 5.3(c)(1) and RPC 5.3(c)(2). With regard to Charge II, the Hearing Committee found that Disciplinary Counsel had not met its burden of proof relative to the charges and found no rule violations by respondent relative to the charge. With regard to Charge III the Hearing Committee found a violation of Rule 5-103(B). With regard to Charge IV the Hearing Committee found no rule violations.

Hearing Committee [ ] filed its report on January 29, 1991, and recommended that respondent receive a public censure. Thereafter, the matter was adjudicated at the March 8, 1991, meeting of the Disciplinary Board of the Supreme Court of Pennsylvania.

## FINDINGS OF FACT

The board adopts and incorporates by reference herein the following findings of fact made by the Hearing Committee, which are amply supported by the evidence, testimony and stipulation of the parties.

### Charge I

(1) In or about 1987 respondent represented a client named [A] in a personal injury action arising from an accident.

(2) Mr. [A] received treatment from [B] Biofeedback Services Inc. for injuries he suffered in the accident.

(3) It was represented to [B] that Mr. [A's] bills would be submitted to his automobile insurance carrier for payment.

(4) On numerous occasions [B] and its counsel, [C], Esquire, attempted to obtain Mr. [A's] insurance claim number from respondent's office.

(5) On May 11, 1988, Mr. [C] filed suit in the Court of Common Pleas, [ ] County, captioned [B] *Biofeedback Services Inc. v. [A]*, May Term 1988, No. [ ], seeking payment of its bill.

(6) Under cover of a letter dated May 10, 1988, received by [B] on May 12, respondent's office sent directly to [B] a check dated May 3, 1988, issued by Mr. [A's] insurance carrier, [D] Insurance Co., for payment of the outstanding bill.

(7) On May 13, 1988, service of the complaint in [B] v. [A] was made upon Mr. [A].

(8) Under cover of a letter dated May 13, 1988, respondent's office sent a copy of the [D] check to Mr. [C's] office and requested that he file an order to settle, discontinue and end the [B] v. [A] suit.

(9) By letter dated May 19, 1988, Mr. [C] acknowledged receipt of the check by his client and demanded that respondent pay one-half of the costs of the suit.

(10) On May 19, 1988, under cover of a letter from [E], a non-lawyer employee of respondent's office, respondent's office transmitted to Mr. [C] copies of an entry of appearance, and answer and new matter (without a verification), notice of deposition and interrogatories.

(11) The answer pleads that plaintiff made payment of the $465 claimed to be owed prior to institution of suit.

(12) The depositions sought to be taken were those of the doctor and owner of [B].

(13) The interrogatories related to the nature of the treatment and services provided to Mr. [A], the charges for such services, and the collection efforts previously made.

(14) All the aforesaid documents were signed by respondent.

(15) By letter dated May 26, 1988, addressed to respondent, Mr. [C] stated that his client would not attend a deposition in that his testimony was unnecessary because the only outstanding issue at that time related to the costs of suit.

(16) On May 27, 1988, Mr. [C's] office filed an answer to new matter and objections to interrogatories.

(17) On June 3, 1988, a motion to compel answers to interrogatories and a motion to compel deposition were filed over respondent's name, both of which were signed by respondent.

(18) In each of the aforesaid motions, it was alleged that the information sought by defendant is "vital to moving defendant for preparation for trial in this matter."

(19) This allegation was false.

(20) By letter dated June 23, 1988, addressed to respondent, Mr. [C] stated that the discovery requests were irrelevant in view of the fact that the only outstanding issue was the payment of costs in the amount of $97.50 and requested that respondent withdraw his motions.

(21) On June 23, 1988, Mr. [C] filed plaintiff's response to defendant's motion to compel deposition and to defendant's motion to compel answers to interrogatories.

(22) By letter dated June 29, 1988, over respondent's signature respondent's office notified Mr. [C] that he would bring an action against him for malicious abuse of process.

(23) Mr. [C] wrote to [respondent] by letter dated September 20, 1988.

(24) During the time period 1987 to 1988, [respondent] employed three attorneys and had a staff of approximately 25 people.

(25) At present, [respondent] employs 12 people, which includes himself and two attorneys, and [respondent] has stated that the volume of his business has substantially decreased because he is much more selective in what he brings in.

(26) [Respondent] also states that he has fired several individuals that used to be with him in the years 1987 and 1988 for various reasons.

(27) [Respondent] stated that he was not directly handling the [A] matter.

(28) The [A] matter was primarily handled by employees of [respondent] and not [respondent] himself. [Respondent] did allow employees to sign his name and certain of the pleadings in the aforesaid matter were signed by [respondent].

(29) During certain of the applicable times in the above matter, [respondent] was in Israel visiting relatives.

(30) [Respondent] did not authorize any employee in his office to advise Judge [F] that certain discovery was necessary in the [A] case.

(31) The [A] case was ultimately settled by [respondent] with Mr. [C] to everyone's satisfaction.

(32)  Although petitioner was not directly involved in the [A] case, he did have the ultimate responsibility for the frivolous activity that his employees did pursue relative to this case.

## Charge II

(33)  By letter from counsel for petitioner dated November 7, 1988, (Form DB-7), respondent was placed on notice of allegations of possible disciplinary violations arising from the allegations set forth in Charge I herein.

(34)  The DB-7 letter alleged, inter alia, that the pleadings filed by respondent in [B] v. [A] were knowingly false and frivolous.

(35)  By letter to counsel for petitioner dated November 15, 1988, copies to respondent, his attorney, [G], Esquire, filed a response to the DB-7 letter.

(36)  In the aforesaid response, Mr. [G] made the following statements on behalf of respondent:

(a)  In response to the allegation that:

On May 19, 1988, under cover of letter from Mr. [E], respondent's office sent to Mr. [C's] office copies of an entry of appearance, answer and new matter, notice of deposition and interrogatories.

Mr. [G] stated:

The respondent was not aware of those pleadings and they were sent without his authority. The respondent told Mr. [E] to settle the matter. Respondent has no recollection of signing any of those matters and if they have his name, it is possible it could have been done by a stamp, but Mr. [E] had no authority.

(b)  In response to the allegation that:

On June 3, 1988, respondent filed a motion to compel answers to interrogatories and a motion to compel depositions.

Mr. [G] stated:

The respondent did not authorize and was not aware at the time of the motion to compel answers and the motion to compel deposition.

(c)  In response to the allegation that:

Respondent made false allegations in the aforesaid motion.

Mr. [G] stated:

The respondent was not aware of the motions, as previously indicated, and did not draft the motions or prepare the language in question and would not have filed them if he had been aware of it. [sic]

(37)  The foregoing statements were made at the direction of and behalf of respondent.

(38)  On November 23, 1988, respondent spoke with Mr. [C] and agreed to reimburse him for the filing costs with respect to [B] v. [A] on the condition that Mr. [C] advise petitioner of the fact that the matter had been amicably settled.

(39)  Counsel for petitioner wrote a series of letters to Mr. [G] to ascertain which, if any, of the pleadings and other documents which were the subject of the complaint were signed by respondent.

(40)  Upon request from Mr. [G], copies of the relevant documents were provided to him by petitioner.

(41)  Mr. [G] wrote several letters to counsel for petitioner, copied to respondent, but did not identify which documents were signed by respondent.

(42) Neither Mr. [G] nor respondent answered the letter of March 27, 1989.

(43) By letter to Mr. [G] dated May 12, 1989, counsel for petitioner advised that a questioned documents examiner had been engaged and requested that respondent identify any person in his office whom he had authorized to sign his name on documents and to provide documents executed by that person in his name which were prepared in the ordinary course of business.

(44) By letter to Mr. [G] dated May 31, 1989, counsel for petitioner again requested an identification of the documents which respondent admitted to having signed, in order to obviate the necessity of further services by the questioned documents examiner.

(45) Mr. [G] wrote to counsel for petitioner by letter dated June 6, 1989, copied to respondent.

(46) All of the letters sent by Mr. [G] to counsel for petitioner were sent after review by respondent, with the knowledge and consent of respondent.

(47) The statements made by Mr. [G] on behalf of respondent with respect to the execution of the documents were not accurate. However, these statements were inadvertent and were not made with the intent to mislead counsel for petitioner, nor were they made to obstruct the investigation being conducted by petitioner.

## Charge III

(48) On March 15, 1986, [H] was injured when the cab he was driving was struck by a vehicle driven by [I].

(49) At the time of the accident Mr. [H] was employed by [J] Cab Co., which was owned by [K] Transportation Co., and was driving a vehicle owned by [K] which was self-insured.

(50) At the time of the accident, Mr. [I's] vehicle was insured by [L] Co.

(51) Shortly after the accident, Mr. [H] retained respondent to represent him in all claims arising from the accident.

(52) On April 25, 1986, Mr. [H] was again injured as a result of an accident involving a [M] vehicle in which he was a passenger.

(53) Mr. [H] retained respondent to represent him in all claims arising out of the [M] accident.

(54) Respondent filed suit in both claims.

(55) During the pendency of the [I] and [M] claims, respondent made an advance to Mr. [H] in the amount of $375.

(56) During the pendency of the foregoing personal injury claims, Mr. [H] was the defendant in on-going litigation in the [ ] Court of Common Pleas, Family Court Division, captioned [*Mrs. H*] v. [*Mr. H.*], No. [ ].

(57) Mr. [H] was represented in the Family Court litigation by [N], Esquire.

(58) In the course of the domestic relations proceedings, a hearing was held on August 4, 1986, before the Honorable [O] on a petition to hold Mr. [H] in contempt for failing to pay support.

(59) At that hearing, Judge [O] ordered that no money be disbursed to Mr. [H] from his personal injury lawsuit without prior notice to and approval of the court.

(60) By letter dated August 6, 1986, Ms. [N] advised respondent's office of Judge [O's] order of August 4, 1986, and forwarded a copy of the order to him.

(61) Respondent failed to take action within his office to insure that no distribution be made to Mr. [H] in derogation of the court order.

(62) Thereafter, respondent or members of his office staff settled Mr. [H's] claim against [M] for $9,500.

(63) On October 27, 1986, [M] issued a draft in the amount of $9,500, payable to respondent and to Mr. [H].

(64) Respondent negotiated the [M] draft and deposited it into his escrow account.

(65) On or about October 29, 1986, respondent or persons acting at his direction issued a check to Mr. [H] in the amount of $3,202.50, drawn on his escrow account,representing Mr. [H's] portion of the proceeds of the [M] settlement after payment of counsel fees and medical bills.

(66) Respondent denies that when distribution was made that he was aware of the Family Court order.

(67) Respondent did not advise Ms. [N] or the Family Court of his receipt of Mr. [H's] funds or of his distribution of the funds to Mr. [H], or to obtain prior court approval for the distribution.

(68) On December 17, 1986, another hearing was held on the petition for contempt of support against Mr. [H] before the Honorable [P].

(69) On that date, Judge [P] ordered that a letter be sent to respondent ordering him that no funds be distributed from the proceeds of Mr. [H's] accident case, without further order of the court.

(70) Under cover of a letter dated January 14, 1987, the Family Court forwarded to respondent a copy of Judge [P's] order of December 17, 1986.

(71) Respondent inadvertently failed to take action in his office to insure that no distribution be made to Mr. [H] without court approval since others in his office were primarily handling the [H's] case.

(72) In or about March 1987, respondent settled Mr. [H's] claim against [I] for $15,000.

(73) In April 1987, respondent received settlement funds in the amount of $15,000 from [L] on behalf of Mr. [H] on account of the [I] settlement.

(74) Respondent negotiated the [L] check and deposited it into his escrow account.

(75) On April 6, 1987, respondent or persons acting at his direction provided to Mr. [H] a statement of distribution which reflected that he was retaining $1,000 in escrow, which he told Mr. [H] was to be held pending resolution of a related first-party claim.

(76) On or about April 6, 1987, respondent or persons acting at his direction made distribution to Mr. [H] in the amount of $6,500.

(77) Respondent did not advise Ms. [N] or the Family Court of his receipt of Mr. [H's] funds and of his distribution of the proceeds to him or obtain prior court approval of the distribution.

(78) Mr. [H] did not pay his support arrearages, as a result of which further court proceedings were held, resulting in a contempt proceeding.

(79) As stated above, although Family Court orders were violated in this matter, petitioner was not directly involved in the violation of these orders, he had no

independent knowledge of them since others in his office were handling the processing of these matters.

(80) By letters dated November 9, 1987, December 30, 1987, July 19, 1988, and August 9, 1988, Mr. [H] requested that respondent provide to him documentation and records concerning his cases and the status of his escrowed funds.

(81) Respondent did not respond until September 26, 1988.

(82) Petitioner ultimately did sit down and explain to Mr. [H] the distribution of his cases. There was no impropriety in the distribution and respondent did not receive or withhold funds improperly.

## Charge IV

(83) On February 16, 1983, [Q], husband and wife, were injured when their vehicle was struck by a truck owned by [S] Auto Stores and driven by [R].

(84) Thereafter, the [Q] retained respondent to represent them in claims arising from the accident.

(85) Respondent filed suit in the Court of Common Pleas, [ ] County, captioned [Q] v. [S] and [R], October Term 1983, No. [ ].

(86) In September 1988, respondent reached an aggregate settlement on behalf of the [Q] with defendant [S] in the total amount of $215,000 to which the [Q] agreed.

(87) Although respondent and his firm failed to advise the [Q] of the relative value of each of their claims, this was primarily the responsibility of the attorney handling the case. Respondent was not primarily involved in the settlement of this case and by the time

he was, the case had already been settled for the aggregate amount.

(88) In October 1988, respondent prepared a schedule of distribution for execution by the [Q's] in which:

(a)  Respondent included the following clause:

This settlement has been explained to us, and we agree with all explanations, calculations and descriptions of expenses and costs.

(b)  Respondent represented that $36,822.75 would be held in escrow for each client pending resolution of certain matters.

(89)  On October 24, 1988, respondent or persons acting at his direction paid to each client $28,000, pursuant to the schedule of distribution.

(90)  On November 23, 1988, respondent or persons acting at his direction made further distribution in the amount of $13,802.45 to Mr. [Q] and $13,890.05 to Mrs. [Q] and provided a second schedule of distribution at that time.

(91)  On November 23, 1988, Mr. [Q] advised respondent that he was dissatisfied with the proposed distribution but that he needed funds in order to return to his native country, Nigeria, to attend his mother's funeral.

(92)  The [Q's] sent respondent a letter dated December 19, 1988.

(93)  Respondent failed to respond to that letter.

(94)  Respondent or persons in his employ refused to make distribution of the remaining $6,225 unless the [Q's] executed an affidavit which, inter alia, acknowledged that the settlement of the accident had been explained thoroughly to them, that all funds and pro-

ceeds were accounted for, that they fully understood and agreed with the final accounting and distribution of proceeds, and that all questions with respect to the case had been satisfactorily answered.

(95) By letter to respondent dated February 20, 1989, the [Q's] reiterated and explained their request for substantiation of expenses and asked for certain other information.

(96) By letter dated February 28, 1989, respondent's office administrator acknowledged receipt of the [Q's] February 20 letter, but instead of responding in writing and providing the documents as requested, asked that Mr. [Q] schedule an appointment.

(97) Respondent maintained adequate records with respect to the expenses relating to the [Q's] litigation and the bills due to be paid from the proceeds, and ultimately did account to the [Q's] relative to those expenses. There was no impropriety or misallocation of said funds.

(98) [ ], a former detective employed by the [ ] District Attorney's Office and presently employed by respondent testified that respondent has a very good reputation for truthfulness, honesty and being a law abiding citizen.

## CONCLUSIONS OF LAW

### Charge I

(1) The board adopts the finding of the Hearing Committee with regard to a violation of RPC 5.3(c)(1) and RPC 5.3(c)(2)—failure to properly supervise non-lawyer employees. The evidence clearly shows that in processing and defending the [A] matter respondent's

employees asserted and controverted issues without a basis for doing so, and that their actions were frivolous and amounted to a violation of RPC 3.1. Respondent testified that he advised his paralegal, [E], to settle the matter and after that he did not follow up on the case nor did he supervise Mr. [E's] activities. This failure of respondent to supervise his employees amounted to a ratification of their conduct, and thus a violation of RPC 5.3(c)(1). Respondent violated RPC 5.3(c)(2) because he was responsible for his non-lawyer employees' violation of RPC 3.1 and he did not mitigate such violation within a reasonable time frame.

(2) The board finds that there is no violation of RPC 3.1 by respondent—a lawyer should not bring, or defend a proceeding or controvert an issue unless there is a basis for doing so which is not frivolous. Petitioner has failed to prove that respondent himself defended the case without a basis for doing so, and thus acted frivolously. Respondent testified that he was in Israel during the critical time when the frivolous activities were engaged in by his employees. When he returned from Israel and found out about this case, he resolved the matter promptly. Since respondent did not have personal knowledge of what his staff was doing he did not violate the Rule.

## Charge II

The board finds that there are no violations of RPC 8.1(a)—involving materially false statements or deliberate failure to disclose a material fact requested in connection with a disciplinary matter; RPC 8.4(a)—attempting to violate the Rules of Professional Conduct, or knowingly assist or induce another to do so; RPC

8.4(c)—conduct involving dishonesty, fraud, deceit or misrepresentation; or RPC 8.4(d)—conduct prejudicial to the administration of justice. Petitioner failed to meet its burden of proof that respondent intended to mislead the Office of Disciplinary Counsel or to obstruct its investigation. Petitioner maintains that statements made by respondent's counsel on behalf of respondent with respect to the execution of documents in the [A] litigation were known by respondent to be false and were made with intent to mislead counsel for respondent and to obstruct the investigation being conducted by petitioner. Respondent testified that he had no intent to mislead petitioner as to whether or not his signature was on the documents in question. He stated that he could not be certain because sometimes he signed documents and sometimes people signed on his behalf, and he had no independent recollection of signing or reviewing the documents. The Hearing Committee found this testimony credible and petitioner offered no evidence to the contrary of respondent's intent.

## Charge III

(1) The board adopts the finding of the Hearing Committee that there is a violation of D.R. 5-103(B)—advancing or guaranteeing financial assistance to a client. Respondent admitted that he paid an advance of $375 to Mr. [H] during the course of the litigation. He did this knowing that it was a violation of the Rules, thus he violated D.R. 5-103(B).

(2) The board finds no violation of D.R. 7-102(A)(7), D.R. 1-102(A)(2), D.R. 1-102(A)(5), D.R. 7-106(A) or RPC 1.4(a). The Hearing Committee found the testimony of Mr. [H] highly incredible and we agree. Pe-

titioner has failed to meet its burden of proof relative to these charges.

## Charge IV

The board finds that Disciplinary Counsel has failed to meet its burden in the [Q] matter and respondent did not violate RPC 1.8(g), RPC 1.8(h) and RPC 1.15. The [Q] matter was handled by another attorney in respondent's office. Respondent did not intervene until he was informed that the [Q's] were dissatisfied with the way the case was being handled. A review of Mrs. [Q's] testimony reveals that these alleged violations are unsupported.

## DISCUSSION

In his answer to the petition for discipline, respondent admitted violating certain disciplinary rules. Also, the parties have entered into an intensive stipulation of facts which support a determination that respondent's conduct constitutes a violation of the disciplinary rules of both the Code of Professional Responsibility and Rules of Professional Conduct. Therefore, the sole issue before the board is the determination of the appropriate discipline to be imposed. The Hearing Committee recommends public censure. Neither petitioner nor respondent filed exceptions to the Hearing Committee report.

The purpose of the Disciplinary system has been set forth in the case of *Office of Disciplinary Counsel v. Lucarini*, 504 Pa. 271, 472 A.2d 186 (1983).

"Its primary function is rather to determine the fitness of an attorney to continue to practice law. It thus serves

to protect the courts and the public from unfit lawyers." *Id.*, 472 A.2d at 190.

The violations committed by respondent in this case are relatively minor and would constitute a basis for non-public discipline. However, respondent's recidivism must also be considered in determining the appropriate discipline. *In re Anonymous No. 57 D.B. 77*, 13 D.&C.3d 529, 530-531 (1979); *In re Anonymous No. 25 D.B. 83*, 29 D.&C.3d 246, 249 (1984).

Respondent's prior disciplinary record includes two informal admonitions and one private reprimand. The conduct warranting this prior discipline arose during the same period of 1987 and 1988 as the matters now before the board and are related to the problem of inadequate supervision by respondent of his staff. The record indicates that respondent has made substantial changes in his office since 1988. He has terminated the individuals who were running his office during these time periods. He has personally taken over the administration of the office and has cut back on his staff and his caseload. There is no evidence that respondent presently is a threat to the bar or the public.

There are no reported Pennsylvania disciplinary cases imposing discipline for an aggregation of violations such as those which exist in this case. However, precedent does require that respondent's conduct be looked at in its totality. While a private reprimand would be sufficient discipline for the violations in the instant matters, the board concludes that a public censure is warranted because of the combination of the prior private discipline given to respondent, and the present found violations.

## RECOMMENDATIONS

Based on the foregoing discussion, the Disciplinary Board of the Supreme Court of Pennsylvania recommends that respondent, [　] be publicly censured by your honorable court. The board further recommends that all costs in connection with these proceedings be paid by respondent.

Mr. Keller dissented.

Dr. Gilbert dissented and would recommend a private reprimand.

Mr. Paris did not participate.

## ORDER

And now, November 26, 1991, upon consideration of the report and recommendations of the Disciplinary Board dated April 30, 1991, it is hereby ordered that [respondent] be subjected to public censure by the Supreme Court at the session of court commencing January 27, 1992, in [　]. It is further ordered that respondent shall pay costs to the Disciplinary Board pursuant to Rule 208(g), Pa.R.D.E.